IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KELVIN DESHAWN ROSS, | ) | No. C 10-0275 JSW (PR) |
| Petitioner, | ) ) ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |
| vs. | ) ) ) | |
| M. JUNIOUS, Warden, | ) ) | |
| Respondent. | ) ) ) | |

## INTRODUCTION

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## PROCEDURAL BACKGROUND

In 2006, a jury in Contra Costa County Superior Court convicted Petitioner of 26 offenses, including eight counts of second-degree robbery, seven of which involved use of a firearm; two counts of attempted robbery; nine counts of second-degree burglary; and four counts of possession of a firearm by an ex-felon. (Ex. 1 at 1011-1020.)[1] "The trial court sustained six enhancement allegations: two serious felony convictions (§ 667, subd. (a)(1)), two prior felony convictions for which defendant had served a prison term, (§

---

[1] Citations to "Ex." are to the record lodged with the Court by Respondent.

667.5, subd. (b)), and two prior felony convictions for kidnaping and robbery that qualified as strikes (§ 667, subds.(b)-(i), 1170.12)." (Ex. 6 at 1.) Petitioner was sentenced to a determinate term of 32 years and four months, six consecutive indeterminate terms of 25 years to life, and additional concurrent or stayed terms. (Ex. 1 at 1084-1099.) His conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied his petition for review. (Ex. 6, 8.)

## FACTUAL BACKGROUND

The facts underlying the charged offense, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> Already burdened with two prior felony convictions that counted as strikes, in January and February 2005, defendant Kelvin Deshawn Ross went on a one-man crime spree in Contra Costa County, resulting in an information charging him with 31 offenses. . . .
>
> . . .
>
> It must be emphasized at the outset that defendant's sole contention applies to only a limited number of the charges against him. He was originally charged with 31 counts, 24 enhancements, and seven prior conviction allegations. Defendant's motion applied to 11 of the charged counts based on four of the clustered offenses in the information. But the jury acquitted defendant of all of the charges relating to one of the clusters (Counts twenty-one, twenty-two, and twenty-three). Thus, the claim of error applies to only three of the clustered offenses covered by defendant's motion that went to the jury, and of which he was convicted, specifically, the clustered offenses relating to: (1) the January 16, 2005 robbery at an El Cerrito Baskin Robbins (Counts twenty-four and twenty-five) (2) the January 23, 2005 robbery at a Richmond Taco Bell (Counts six, seven and eight), and (3) the January 30, 2005 robbery at an El Cerrito Taco Bell (Counts eighteen, nineteen, and twenty).
>
> In his pretrial brief, defendant advised the court that he would seek "to admit evidence that these robberies may have been committed by Anthony Franklin.... In addition, ... to admit evidence that all of the incidents he is charged with may have been committed by Thomas Coleman or another unknown suspect." The word "all" is to not to be taken in its literal sense, because defendant was talking about only four of the "11 separate incidents" covered by the information. In his brief, defendant outlined an "offer of proof supporting admissibility of third party culpability evidence."
>
> Defendant specified the following categories of "[e]vidence of third party culpability" he sought to introduce: "1. Evidence of the photo lineup viewed by

2

Ms. Mejia where she identified Mr. Franklin. [¶] (2) Evidence of the robbery of Mr. Ewing and his identification of Mr. Franklin and Mr. Ross. [¶] (3) Evidence of the pending charges against Mr. Franklin. [¶] (4) Evidence of the robbery of Mr. Jayasundara and his identification of Thomas Coleman."

The prosecutor filed written "Opposition ... to Defense Motion to Present Third Party Culpability Evidence in Jury Trial." Defendant's motion was the subject of a two-day evidentiary hearing conducted pursuant to Evidence Code section 402.[3] The testimony heard by the trial court may be summarized as follows:

Christopher Ewing testified that on the evening of January 27, 2005 he was robbed while working at a Subway sandwich shop in Richmond. A man entered the store and asked for a sandwich. "Halfway through [making] the sandwich, I had a gun in my face." The man demanded that Ewing "Give me the money!" Ewing did so, whereupon the man ran out of the store.

Ewing further testified that within a week after the robbery, Richmond police showed him a photographic line-up. Ewing picked out a photograph of Michael Franklin as the man who robbed him. Sometime later, an investigator working for Franklin showed Ewing a picture of defendant, whom Ewing identified as the robber. At the hearing, Mr. Ewing stated "I have my doubts" about his prior identification of defendant, and he made only a tentative identification of defendant.

The second witness was Mayra Mejia, who testified that she was working at a Taco Bell in El Cerrito on January 30, 2005 when a man entered the restaurant, "came up to the register, pointed the gun and told me to open the drawers and give him the money," which she did. Some time later, police showed her a photo line-up, and she picked out defendant as the man who robbed her. At the hearing, her identification from the photograph of defendant was not firm: "It looks like him. I can't tell you if it is him or not, but it's like his nose is wide as well, yeah." Asked on cross-examination, "[A]s you sit here today, do you believe that to be the person?" Ms. Mejia replied, "I don't know. I don't remember."

Ms. Mejia further testified that about 18 months later, a defense investigator showed her a different photo line-up, and she picked out a picture of Franklin "[b]ecause he look[ed] like the guy that robbed us." When confronted with defendant at the hearing and asked whether he was the robber, Ms. Mejia replied, "He looks like the guy in the picture. [¶] ... [¶] I can't say, but he does have similar features."

The final witness was the defense investigator, Kelly Whitney. She testified that on October 30, 2006, she showed Mejia a photo array. Mejia quickly "within five seconds" picked out Franklin, stating, "I'd say it's this one."

Defendant sought to have admitted in evidence a copy of the information filed against Franklin. The prosecutor objected that the information lacked relevance because none of the charges against Franklin involved either the Ewing or Mejia robberies. When asked by the court "What is the relevance?", defendant's counsel responded: "There are a series of similarities in the sense of geography and time of robberies occurring which overlap between Mr. Ross's matters, what he's charged with, and Mr. Franklin. So that's the relevance of the information." The trial court then decided that the information was being offered for a hearsay purpose ("What

3

> you are asking me to do ... is take the contents of the information for the truth of the matter"), and refused to receive it in evidence.
>
> After hearing brief argument on defendant's motion, the court granted it in part and denied in part.

*People v. Ross*, No. A118484, 2008 WL 2974309 (Cal. Ct. App. Aug. 5, 2008) at *1-5 (footnotes omitted).

## **STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court

4

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## **DISCUSSION**

As grounds for habeas relief, Petitioner claims that his constitutional right to due process and to present his defense was violated by the exclusion of third party culpability evidence at trial. (Ex 3 at 38.)

The evidence excluded at trial was offered in support of the theory that Anthony Franklin (Mr. Franklin) or Thomas Coleman (Mr. Coleman) "may have" been responsible for three robberies accounting for eight of the 23 charges for which Petitioner was convicted: (1) the robbery of the El Cerrito Baskin Robins on January 16, 2005 (Counts 24-25); (2) the robbery of the Richmond Taco Bell on January 23, 2005 (Counts 6-8); and (3) the robbery of the El Cerrito Taco Bell on January 30, 2005 (Counts 18-20).[2] (Ex. 6 at 2.) Petitioner offered evidence that Mr. Coleman and Mr. Franklin had committed other crimes that were not charged against Petitioner. Petitioner believes that these crimes allegedly committed by Mr. Franklin and Mr. Coleman were similar in time, method, and

---

[2] Petitioner originally sought to introduce evidence as a defense to charges stemming from a fourth robbery, committed on January, 23 2005 (Counts 21-23). He was acquitted of that robbery.

geographic location to some of the crimes with which Petitioner was charged. The excluded evidence can be grouped into three categories: (1) Mr. Ewing's identification of Petitioner and Mr. Franklin in connection with an uncharged robbery of a Subway sandwich shop in Richmond; (2) pending charges against Mr. Franklin; (3) evidence that Mr. Coleman was identified in an uncharged robbery of a Radio Shack in El Cerrito.[3] (Ex. 6 at 3.)

The California Court of Appeal upheld Petitioner's convictions, reasoning that the exclusion of evidence at trial was neither an abuse of discretion under California law nor a violation of Petitioner's constitutional rights. (Ex. 6 at 16.) First, the appellate court determined that the exclusion of evidence at trial was consistent with California state law. (Ex 1. at 11.) (citing *People v. Hall,* 41 Cal.3d 826, 833 (1986) (establishing a minimum standard for admission of third party culpability evidence in California, which requires evidence to be "direct or circumstantial" and capable of "rais[ing] a reasonable doubt about a defendant's guilt")). Next, the appellate court addressed Petitioner's federal constitutional claim by distinguishing between the facts of his case and those of *Holmes v. South Carolina,* 547 U.S. 319 (2006) (holding that the exclusion of third party culpability evidence based solely upon the strength of the prosecution's case was arbitrary and contrary to the defendant's constitutional right to present a defense). In *Holmes*, the United States Supreme Court specifically cites *Hall* as an example of a state "approach that [is] consistent with constitutional requirements." *Holmes,* 547 U.S. at 327. The appellate court noted this when concluding that Petitioner's constitutional rights were not violated because the excluded evidence was at best "marginally relevant." (Ex. 6 at 15-16.)

The exclusion of third party culpability evidence did not violate Petitioner's

---

[3] A fourth category of third party culpability evidence relating to a robbery of which Petitioner *was* charged -- the robbery of an El Cerrito Taco Bell on January 1, 2005, in Counts 18-20 -- was admitted at trial. (Ex 6 at 6.)

6

constitutional rights. The erroneous exclusion of critical, corroborative defence evidence may violate the Sixth Amendment right to present a defence, as well as the due process right to a fair trial. *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing *Chambers*, 410 U.S. at 294, and *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are " arbitrary or disproportionate to the purposes they are designed to serve. " *Holmes*, 547 U.S. at 319-320 (internal quotations omitted).

A brief examination of *Chambers* and *Holmes* illustrates the stark contrast between evidence that the Supreme Court has determined to be critically corroborative and the evidence excluded at Petitioner's trial. In *Chambers,* the Mississippi "voucher rule" prevented the defense from impeaching a witness, McDonald, who repudiated a previous confession to the murder with which the defendant was charged. *Chambers,* 547 U.S. at 325. The court also excluded the testimony of three witnesses to whom McDonald made three separate confessions. *Id*. In *Holmes,* the court excluded testimony of four defense witnesses who claimed that a Jimmy McCaw White had on four separate occasions either "acknowledged that petitioner was innocent or had actually admitted to committing the crimes." *Holmes,* 547 U.S. at 323 (citing *State v Holmes*, *320 S.C. 259, 340-342)* (internal quotations omitted).

By contrast, the evidence excluded here was not confessions by third parties to the crimes with which Petitioner was charged. Rather, Petitioner sought to introduce evidence that Mr. Coleman was identified as the perpetrator in *an uncharged* crime, namely, the robbery of a Radio Shack in El Cerrito in 2005. Furthermore, the only evidence relating to

7

Mr. Coleman was pled in a written offer of proof submitted to the court in Defendant's Trial Brief. (Ex 1 at 464.) Petitioner did not present such evidence at the trial court hearing, however. (Ex. 6 at 3-4.) As a result, the identification of Mr. Coleman was never substantiated. The unconfirmed, conclusory statements contained in Petitioner's written offer of proof that Mr. Coleman may have committed a crime not charged against Petitioner is not critical corroborative defense evidence.[4]

The evidence that was addressed at the evidentiary hearing, concerning Mr. Franklin, is also not critical corroborative defense evidence. Again, unlike the confessions excluded in *Holmes* and *Chambers,* the evidence of pending charges against Mr. Franklin and Mr. Ewing's identification of Mr. Franklin concerns crimes which were never charged against Petitioner. (Ex. 6 at 5.) This evidence has very little, if any, probative value because it does not directly address the convictions that Petitioner is challenging.

In addition to lacking probative value, the excluded evidence about Mr. Franklin does not bear "persuasive assurances of trustworthiness." *Chambers,* 547 U.S. at 302. The Constitution permits the exclusion of evidence whose "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes,* 547 U.S. at 326. Petitioner argues that Mr. Franklin may have committed the crimes he was convicted of because "[t]here are a number of similarities between the robberies Mr. Franklin [was] charged with and the robberies Mr. Ross [was] charged with. With a couple of exceptions, the robberies were all perpetrated by a single gunman and the targets were small commercial businesses with one to three employees on duty." (Ex 6 at 9.) The only evidence of pending charges against Mr. Franklin, however, are the charging documents which do not contain this type of detailed information. *Id*. The exclusion of hypothetical, unsubstantiated evidence does not violate Petitioner's

---

[4]The trial court provided Petitioner two weeks to gather witnesses in preparation for the evidentiary hearing. (Ex 2 at 19.)

constitutional rights.

Mr. Ewing's testimony at the evidentiary hearing was similarly untrustworthy. Mr. Ewing testified that he was the victim of a robbery while working at a Subway sandwich shop on January 27, 2005 and that he identified Mr. Franklin as the culprit when shown a photo lineup by police. (Ex 6. at 3-4.) Mr. Ewing further testified that he was later approached by a private investigator (Mr. Stein) who showed him a single photograph of Petitioner. (Ex 6 at 4.) Mr. Ewing initially recalled telling Mr. Stein that the photograph was not the person who robbed him; however, his testimony went on to confirm that he signed a statement indicating otherwise.[5] Mr. Ewing's testimony contradicts itself which, when juxtaposed against the consistent confessions in *Holmes* and *Chambers,* makes this category of evidence less than trustworthy. Mr. Ewing also indicated that the color and resolution quality of the photographs varied between the first and second identification. (Ex. 2 at 121-138.) The resolution and color of photographs may have affected Mr. Ewing's perceptions and influenced the statements of identification he made to police and to Mr. Stein. Furthermore, at the hearing, Mr. Ewing identified Petitioner as the individual who robbed him, although he did express "doubts" over his own ability to accurately recall events that occurred over two years ago. (Ex. 2 at 131-133.) Mr. Ewing's own doubts reflect the trial courts reluctance to admit evidence that is at best slightly probative and at worst untrustworthy and confusing to the jury.

In sum, the evidence about Mr. Franklin not only concerned crimes not charged against Petitioner (as was that of Mr. Coleman), but it also lacked "persuasive assurances of trustworthiness." *Chambers,* 547 U.S. at 302. As such, it did not amount to critical corroborative defense evidence.

Finally, the trial court did admit some third party culpability evidence, indicating

---

[5] Mr. Ewing's signature was written on Petitioner's photo next to the following words: "I have examined this photograph and there's no doubt in my mind this is the person who robbed me at the Subway restaurant, on January 6, 2005."(Ex 2 at 130.)

that it did respect Petitioner's constitutional right to present a "complete defense." *Crane,* 476 U.S. at 690. The trial court admitted Ms. Mejia's testimony to show that a third party committed the crimes charged in Counts 18-20. (Ex. 6 at 6.) This category of evidence was admitted despite the fact that Ms. Mejia could not articulate "when she made the identification [of Petitioner] in the first place to police officers . . . when she made the identification [of Mr. Franklin] to the investigator, or . . . identify anybody in court [at the evidentiary hearing]." *Id.* At trial, Petitioner was convicted of Counts 18-20 despite the admission of this third party culpability evidence. *Id.*

Petitioner has failed to show that any critical corroborative defense evidence was excluded so as to infringe upon his constitutional rights to due process and to present a complete defense. *See Chia*, 360 F.3d at 1003; *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001). As a result, the state courts' rejection of this claim was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: October 1, 2012

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| KELVIN D. ROSS, | Case Number: CV10-00275 JSW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| M. JUNIOUS et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 1, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kelvin DeShawn Ross
Prisoner Id F79463
P.O. Box 3461
Corcoran, CA 93212


Dated: October 1, 2012

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

11